GEORGE E. SMITH v. ELISHA BUNCH ET AL.

Decided March 5, 1903.

**1.—Severance—Trial—Judicial Discretion.**

The matter of a severance in the trial is one within the discretion of the court, and unless an abuse of its discretion it shown, operating to the injury of the complainant, its action in refusing a severance will not be reviewed on appeal.

**2.—Trial—Postponement—Harmless Error.**

Complaint of the action of the court below in granting a postponement of the trial is unavailing where it is not shown that any injury resulted therefrom.

**3.—Evidence—Plat of Survey.**

A plat showing surveys of land is not admissible as independent evidence of the surveys where it is authenticated only by the testimony of a witness who was not a surveyor, had made no survey of the land, and did not make the plat, though he testified that he was familiar with the land, was with the surveyor who made the survey, and knew the plat was correct.

**4.—Same—Trial by Court—Improper Evidence.**

Where the trial is by the court without a jury, the improper admission of evidence is not sufficient ground for reversing the judgment.

**5.—Limitations—Ten Years' Possession.**

Where defendant had acquired title to the land by virtue of possession for ten years, plaintiff, who formerly held the legal title, could not upon his subsequent entry and possession claim under the three and five years statutes of limitations,—nothing short of ten years possession being sufficient to re-invert him with the title.

**6.—Appeal—Cross-Assignment—Jurisdiction.**

Where the plaintiff recovers against several defendants and only one of them appeals, the appellate court has not jurisdiction to consider a cross-assignment by the other defendants seeking a reversal of plaintiff's judgment as against them.

**7.—Same—Clerical Error—Certiorari.**

The appellate court will not correct a probable clerical error in the transcript, the proper remedy being by certiorari to perfect the record.

Appeal from the District Court of Galveston. Tried below before Hon. Wm. H. Stewart.

*John E. Linn,* for appellant.

*Wm. T. Austin,* for appellee.

GARRETT, CHIEF JUSTICE.—This action was brought in the District Court of the Tenth Judicial District by the appellee, Elisha Bunch, against George E. Smith, the appellant, and C. T. Cade and the Texas Star Oil and Land Company for the recovery of five parcels of land, parts of the Martin Dunman survey situated at High Island, on Bolivar Peninsula, in Galveston County. The Martin Dunman survey contains 15½ labors. In 1854 it was partitioned in the District Court of Galveston County between his widow Elizabeth and their eight children, and the western half of the survey was set apart to the widow. The eastern

half was divided into eight tracts by cutting it half in two by a line running in an easterly and westerly direction parallel with the north and south lines of the survey and cutting these two into four equal tracts each by lines running nearly north and south parallel with the east and west lines. The four tracts north of the first dividing line were numbered, commencing on the west, 5, 6, 7 and 8, consecutively, the west line of No. 5 being the east line of the half set apart to the widow, Elizabeth Dunman, and the east line of No. 8 being the east line of the survey. Two of the parcels sued for lie in No. 6, and three of them lie in lot No. 7, and all of them lie in an inclosure of land made by the appellee Bunch extending east and west across lots 6 and 7. Parcel one (1) contains 4.213 acres, and parcel two (2) contains 1.578 acres; these two are in No. 6; parcel three (3) contains .27 of an acre; parcel four (4) contains 2.846 acres; and parcel five (5) contains .918 of an acre. The last three lie in No. 7. The appellant pleaded not guilty and the statutes of three, five and ten years limitation, and also estoppel. The cause was dismissed as to Cade, and the Texas Star Oil and Land Company pleaded not guilty. Trial was had to the court without a jury and resulted in a judgment in favor of the appellee for four of the parcels sued for, and in favor of the appellant for parcel two (2).

The appellant had a perfect chain of title from Amanda Dunman, to whom lot No. 6 had been set apart, for that tract, and from Martha Dunman for lot No. 8, which had been set apart to her. Lot No. 7 was set apart to Elizabeth Dunman, who first married one Turley, and after his death married James Cronea. Elizabeth Hampshire, widow of Dunman, married again, and widow a second time, without any evidence of title in her thereto, executed a deed to Elisha Bunch, the appellee, on March 1, 1880, by which she undertook to convey to him "twenty-five acres, to be taken off the north end of lot No. 8 of the partition, being the part allotted to Martha Dunman, one of the heirs of said Martin Dunman, and includes the high land only and the improvements made by the said Elisha Bunch." It was shown by the evidence that Bunch had settled the place where his improvements were in 1878 or 1879, and that his house was actually on lot No. 6. Claiming under the deed from Elizabeth Hampshire, he took possession of land situated in lots Nos. 6 and 7. He had no inclosure or improvements on lot No. 8. On March 27, 1882, Bunch executed a deed to Elizabeth Cronea, the field notes of which are as follows:

"Beginning at a stake on N. E. corner of E. L. Cicero's survey and the S. E. corner of this survey; thence north, .23 west, 635 feet to a stake; thence south 67 west, 885.5 feet to a stake; thence N. 23 W., 181 feet to a stake; thence S. 67 W., 885.5 feet to a stake, the N. W. corner of this survey and the S. W. corner of Elisha Bunch's survey; thence S. 23 E. 1062 feet to a stake, the N. W. corner of Crossman & Simpson's survey and the S. W. corner of this survey; thence N. 67 E. 885.5 feet to a stake and the N. E. corner of Crossman & Simpson's survey; thence

N. 23 W. 246 feet to a stake and the N. W. corner of E. L. Cicero's survey; thence N. 67 E. 885.5 feet to the place of beginning."

On the same day Elizabeth Cronea joined by her husband executed a deed to Elisha Bunch for the following described land: "Beginning at a stake on the N. E. corner of the Elizabeth Turley survey and the S. E. corner of this survey; thence N. 23 W. 595 feet to a stake; thence S. 67 W., 885.5 feet to a stake; thence N. 23 W. 221 feet to a stake; thence to the S. E. corner of Elijah Bunch's 15-acre survey; thence S. 67 W. 885.5 feet to a stake, the N. W. corner of this survey and S. W. corner of the Elijah Bunch survey; thence S. 23 E. 635 feet to a stake, the N. W. corner of Elizabeth Turley survey and S. W. corner of this survey; thence N. 67 E. 885.5 feet to a stake; thence S. 23 E. 181 feet to a stake; thence N. 67 E. 885.5 feet to the place of beginning, and containing 12¾ acres, together with all and singular rights, members," etc.

The deed from Elizabeth Cronea to Elisha Bunch calls for 12¾ acres, but the amount actually included within the bounds is about 22¾ acres. The description extends the land conveyed across two of the lots, and if these lots are 8 and 7, then the part of lot 7 conveyed is about 12¾ acres; but if the field notes are applied to lots 7 and 6, only 9.8 acres of lot 7 would be conveyed. The location of these surveys depends upon where the E. L. Cicero tract lies, whether on lot 7 or lot 8. No title is shown in Elizabeth Cronea to any land except lot 7, and the deeds between her and appellee were probably in settlement of appellee's claim to her land caused by the deed of Elizabeth Hampshire to him for a part thereof. The evidence shows that the E. L. Cicero tract lies in lot No. 8, and that its northeast corner is a well established corner in the east line of that lot, and the deed must be construed as applying to land in lots 7 and 8, although there is evidence tending to show that the Cicero tract was in fact situated in lot No. 7.

The plaintiff joined by his wife executed the following deeds to the defendant, George E. Smith:

(1) General warranty deed dated September 8, 1893, recorded October 7, 1898, in which he conveyed to Smith "all that certain tract or parcel of land situated in the county of Galveston, State of Texas, being a part of the Martin Dunman 15½ labors survey, being 25 acres off the north end of lot or tract No. 8 of the partition of said survey among the heirs of Martin Dunman; said tract or lot being the part allotted to Martha Dunman, one of the heirs of said Martin Dunman, said 25 acres including high land only, and not including the marsh land at the extreme north end of lot No. 8; said tract of land is the same tract that was conveyed to Elisha Bunch by Elizabeth Hampshire, by deed dated March 1, 1880, recorded in book 32, page 490, of the deed records of Galveston County, Texas, and is the same 25 acres that was surveyed and appropriated by Elisha Bunch under and by virtue of said last mentioned deed, to which reference is made for a more particular description. We hereby reserve and except from this conveyance, however, 12¾

acres out of the above described tract of land conveyed by us to Mrs. Elizabeth Cronea by deed dated March 27, 1882, recorded in book 42, on page 345 of the deed records of Galveston County, Texas, to which deed reference is made for a more particular description of the 12¾ acre tract, so excepted, the quantity of land hereby conveyed being 12¼ acres, and being all of the aforesaid twenty-five (25) acre tract except the 12¾ acres so conveyed to Mrs. Elizabeth Cronea, to have and to hold," etc.

(2) General warranty deed dated August 14, 1895, conveying "all that certain tract or parcel of land situated in the county of Galveston, being a part of the Martin Dunman 15½ labors survey, being two and three-quarters (2¾) acres off the west side of a tract of land in lot or tract 8 of the partition of said survey among the heirs of Martin Dunman, of which said lot 8, being the part allotted to Martha Dunman, one of the heirs of said Martin Dunman, and the 2¾ acres hereby conveyed lies on the west side and joins the 12¼ acres conveyed by us to George E. Smith by deed dated September 8, 1893."

(3) General warranty deed dated December 18, 1896, conveying "all that certain tract or parcel of land situated in the county of Galveston, being a part of the 15½ labors survey, and being the east half of a ten-acre tract owned by us in lot No. seven (7) of said Dunman survey, excepting all improvements now thereon located; said tract contains five (5) acres of land."

The two last conveyances appear to be within the boundaries of the first conveyance. There is no evidence to show what land was taken possession of by Bunch and surveyed under the deed of Elizabeth Hampshire to him, except that the deed describes the land as including high land only and the improvements made by Bunch, who also testified that he held under the deed from Elizabeth Hampshire. But the exchange of deed between Elizabeth Cronea and Elisha Bunch is evidently of land surveyed for Bunch under his Elizabeth Hampshire claim. It does not appear that he had any other claim there, and the deed from Elizabeth Cronea and husband to him calls to begin on the corner of the tract conveyed to her by Bunch, and in his first deed to Smith the land which is conveyed is all of the Elizabeth Hampshire tract except that which had been conveyed to Elizabeth Cronea. But if this conveyance should be confined to lot 8 it would not have its full acreage, but would cover that part of lot 8 included in the deed of Elizabeth Cronea to Bunch; and if the second conveyance of 2¾ acres should be confined to lot 8 it would cover that much land of the first conveyance, instead of adjoining it on the west, as the call is. As has been shown, applying the field notes of the deed from Elizabeth Cronea to Bunch to lots 7 and 8, the tract in No. 7 would be about 12¾ acres, so the third conveyance would not embrace half of that tract, but would extend into Bunch's inclosure, leaving Bunch 7¾ acres of his 12¾ acres in lot No. 7. On March 4, 1899, the plaintiff Bunch conveyed to Edward McCarthy and David Fahey 5 acres off the west end of the tract in lot No. 7, as follows:

"All that certain tract or parcel of land lying in Galveston County, Texas, out of subdivision No. 7, in the Martin Dunman survey, described by metes and bounds as follows: Beginning at the N. W. corner of a tract of land conveyed to Elisha Bunch by James and Elizabeth Cronea, March 27, 1882, by deed recorded in the office of the county clerk of Galveston County, Texas, in book 42, page 346; thence N. 67 E., along the north line of said tract conveyed to Elisha Bunch by Cronea, 347 25-100 feet to a point for corner, being the N. W. corner of a five-acre tract heretofore conveyed to George E. Smith; thence S. 23 E., 635 feet along the west line of said five-acre tract to a point for corner in south line of said tract conveyed to Elisha Bunch by James and Elizabeth Cronca; thence S. 67 W., 347 25-100 feet to S. W. corner of said tract conveyed to Elisha Bunch by Cronea; thence N. 23 W. 635 feet to the place of beginning, containing five (5) acres of land, more or less, together with all the improvements situated thereon."

Thus it will be seen that if the 2¾ acres of the second conveyance to Smith should be confined to lot 8, there would be left an excess of acreage of that amount in the tract in lot 7.

It was shown by the evidence that the dwelling house of Bunch was situated on lot No. 6, and that his inclosure extended to within 108 feet of the west line of that lot; that he had inclosed about 25 acres of land extending from near the west boundary of No. 6 across that lot onto No. 7 to a point east of the west line of the 5-acre tract conveyed to Smith, if that tract should be constructed on the west line of No. 8. Plaintiff's inclosure entered No. 7 above the north line of the tract conveyed to him by Elizabeth Cronea and conveyed by plaintiff to Smith, and included, outside of the boundaries of that tract, that part of lot 7 described in the petition as the third (3) parcel, containing .27 of an acre. His inclosure also extended over the south line of the tract in No. 7 conveyed to Smith and included the land described in the petition as the fifth (5) parcel, containing .918 of an acre. Parcel one (1), containing 4.213 acres, lies entirely within the inclosure and within lot 6. The inclosure does not include parcel two (2), containing 1.578 acres, which lies on the west line of No. 6. Plaintiff had had possession of the land lying within his inclosure for more than ten years at the time of his first conveyance to Smith, claiming and using it in such manner as to confer title in him thereto by limitation. There is testimony tending to show that the plaintiff and others had taken possession and settled under conveyances of land to them further to the west by the width of a lot than their deeds called for; but we conclude from the evidence, as well as from a proper construction of the deeds, that the plaintiff intended to sell and that Smith intended to buy the plaintiff's claim in lots 7 and 8, and not in lot No. 6; and that the three deeds from the plaintiff to Smith and the deed from the plaintiff to McCarthy and Fahey embraced all of the land owned by him in lots 7 and 8 included within the boundaries of the deed from Elizabeth Cronea to him. The

five acres of lot 7 conveyed by plaintiff to McCarthy and Fahey passed by mesne conveyances to the Texas Star Oil and Land Company. Plaintiff also conveyed to the Texas Star Oil and Land Company by deed dated June 24, 1901, by metes and bounds five acres out of lot 6, including his improvements, leaving in his inclosure not conveyed by him the parcel one (1) described in the petition.

By the first assignment of error the appellant complains of the refusal of the trial court to grant him a severance in the trial from the Texas Star Oil and Land Company. The question of severance in the trial was for the discretion of the court, and unless it should appear that such discretion was abused, and that by reason thereof the appellant sustained injury, the action of the court in refusing a severance will not be revised. Snider v. Methvin, 60 Texas, 489; Ballard v. Perry, 28 Texas, 362; Boone v. Hulsey, 71 Texas, 184; Land Co. v. Wood, 71 Texas, 464. No reason is shown why a severance was necessary to a proper presentation of the appellant's defenses; and it does not appear that he could have sustained any injury by the action of the court.

It may be that the court should not have postponed the trial of the case, as complained of under the second assignment of error, but the appellant shows no injury by the action of the court in doing so. If he was not ready for trial when the case was called at the time to which it had been postponed, he might have applied for a continuance, which he did not do, and he has not shown how he could have been injured in any way of which this court can take cognizanze.

While the defendant Smith was testifying as a witness in his own behalf he offered, in connection with his evidence, a plat which he said was a correct map of the tracts of land delineated thereon as they were located on the ground by their corners, lines and inclosures, and as claimed and held by the several persons in possession thereof. He offered to testify that he was familiar with the location of the several tracts, and had been about twenty years, and that he was with the surveyor who made the survey and plat and knew that the plat was correct. The plat was offered as independent evidence, and it was proposed to authenticate it for that purpose by the testimony of a witness who was not a surveyor, had made no survey of the land, and did not make the plat. It was not offered to be used in connection with the evidence of the witness for the purpose of illustrating his testimony, as in the case of Griffith v. Rife, 72 Texas, 187. As independent evidence it was not admissible. 9 Am. and Eng Enc. of Law, 900, 901, and notes. The exclusion of the plat, if error, would not require a reversal of the judgment because, admitting that the several tracts were located on the ground as shown by it, the judgment of the court could not have been affected by that fact. Since the case was tried by the court without a jury, the admission of the testimony of Hensoldt and the evidence of the abstract and opinion, as shown by the fourth and sixth assignments of error, would not be sufficient ground for reversing the judgment. The sixth assignment, moreover, does not point out any error, as the bill of .

exceptions referred to does not show the nature of the opinion referred to, or that the appellant could have been prejudiced by its admission in evidence.

By his eighth assignment of error the appellant contends that the court erred in rendering judgment against him for parcel one (1) described in the petition, situated in lot No. 6, and containing 4.21 acres. The appellant showed a perfect chain of record title to lot No. 6, and should have had judgment for the parcel one (1) unless it had been devested by limitation and acquired by the plaintiff Bunch. It was shown by the evidence that the plaintiff had been in possession of the land for more than ten years before the execution of his first deed to the appellant, and that his possession was of such character as to confer title by limitation. The deed did not include this tract, but, as we have construed it, only included land in lots 7 and 8. This is shown not only by the recitals in the deed, but also by other testimony which showed that the appellant himself thought that he was buying the plaintiff's claim in lots 7 and 8, and when no deed could be found from Martha Harrison to Elizabeth Hampshire for lot 8 he then bought her title, which was after the institution of this suit, April 7, 1902. His first deed calling only for land in lot 8, he made the subsequent purchases to confirm his title to land that he contended that he had already bought. The 2¾ acres, or second purchase, although it called for lot 8, still described the land conveyed as adjoining the first purchase on the west; and the third deed for five acres as being the east half of a ten-acre tract in No. 7. There is a confusion in the description arising from the belief, it seems, that all of the land lay in lot No. 8, but the description in the deed from Cronea to Bunch extended by metes and bounds across both tracts; and the Cicero northeast corner being clearly identified as on the east line of No. 8, there can be no dispute about the location of the land conveyed by Cronea to Bunch, and subsequently by Bunch to Smith. Another fact which tends to strengthen the conclusion that the parties were not mistaken as to the land included in the first deed, is that Smith knew that he was getting by it open land to the east of Bunch's inclosure. The appellant can not recover the parcel one (1) by limitation, because when he went into possession of it Bunch's possession had already ripened into title by ten years limitation, and had devested out of Smith whatever title he had by his deeds, so that he could not claim under them either three or five years limitation. Land Imp. Co. v. Shelby, 17 Texas Civ. App., 685, 41 S. W. Rep., 542; McGregor v. Thompson, 7 Texas Civ. App., 32, 26 S. W. Rep., 649. Nothing short of ten years limitation would be sufficient to confer title on him. There was evidence tending to show that the parties were mistaken in the call for improvements in the deed from Bunch to McCarthy and Fahey, but in all other respects the description fits the five acres sought to be conveyed on the west end of the Cronea conveyance. But even if the plaintiff had been mistaken as to the location of the land sold McCarthy and Fahey, and had believed that he had no

land left there, it would not pass the title to the remainder to the appellant by estoppel, as contended in the brief. The fact remains that the deeds clearly define the location of the conveyances made by Bunch to Smith when the beginning corner is once established, which is done with a sufficient degree of certainty. The court did not err in adjudging parcel one (1) to the plaintiff.

The deed from plaintiff to Smith did not embrace within its boundaries either parcel three (3) or parcel five (5), and the plaintiff's title to these was shown to have been established by limitation. But parcel four (4), containing 2.846 acres, was included in the first deed from Bunch to Smith, as well as in the second deed, and the court erred in giving plaintiff judgment for it. The remaining assignments of error have been disposed of in passing on the questions presented by the others, and need not be specially noticed. The Texas Star Land and Oil Company has undertaken to have the judgment in favor of the plaintiff against it reversed upon a cross-assignment of error. As it did not appeal from the judgment, this court has no jurisdiction to pass upon the controversy between it and the plaintiff. Halsell v. Neal, 23 Texas Civ. App., 26, 56 S. W. Rep., 140.

The judgment of the court below will be affirmed as to all the land recovered by the plaintiff except parcel four (4); as to that it will be reversed and judgment will be here rendered therefor in favor of the appellant.

*Affirmed in part; reversed and rendered in part.*

### ON MOTION TO CORRECT CONCLUSIONS.

1. The finding that the deed from Elisha Bunch and wife to George E. Smith, dated September 8, 1893, was recorded October 7, 1898, is as the date appears in the transcript. It is probably a clerical error made in transcribing the statement of facts, for the second deed from Bunch to Smith, which was recorded in a later volume of the deed records, appears to have been recorded November 29, 1895. It is probable that the error consisted in writing 1898 for 1893. But this court can not correct the transcript, as requested by the appellant. He should have applied for a writ of certiorari to perfect the record.

2. The deed from Martha Harrison to George E. Smith was dated April 17, 1892, and not April 7, 1902, as stated in the opinion. We can not understand how we fell into the error, for the date is plainly given in the transcript. Nevertheless we did so, and the correction is made.

Writ of error refused.